# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| KRISTINA POWELL, <br><br> Plaintiff, <br><br> vs. <br><br> MINNESOTA LIFE INSURANCE COMPANY and SECURIAN LIFE INSURANCE COMPANY, <br><br> Defendants. | No. 21-CV-2061-CJW-MAR <br><br> **MEMORANDUM OPINION AND ORDER** |

This matter is before the Court on defendants' Motion to Dismiss Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 4). Plaintiff timely filed a resistance. (Doc. 7). Defendants timely filed a reply. (Doc. 9). On April 11, 2022, the Court heard oral argument. (Doc. 10). For the following reasons, the Court **grants** defendants' motion to dismiss.

## I.  BACKGROUND[1]

This is a dispute over life insurance proceeds. Plaintiff is the widow of Scott Powell ("Powell"), who was employed by Deere & Company ("Deere"). (Doc. 1, at 1-2). Deere provided Powell group life insurance under a policy issued by defendants ("the Plan"). (*Id.*, at 2). The Plan provided employees the right to convert the group life insurance policy to an individual policy upon termination from employment if the employee applied for conversion and paid the first premium within 31 days after the group insurance terminates. (*Id.*). If an employee died during that 31-day period,

---

[1] The Court accepts as true all factual allegations in the complaint and views them in the light most favorable to plaintiff. FED. R. CIV. P. 12(b)(6); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

defendants would pay the death benefit regardless of whether the employee applied for an individual policy or paid the first premium.  (*Id.*, at 3).

In early 2020, Deere offered early retirement packages to some employees, including Powell.  (*Id.*).  On July 23, 2020, Deere verbally represented to Powell that upon his separation from Deere, defendants would send him a Conversion/Portability notice explaining his options for continuing his life insurance policy.  (*Id.*).  In a written separation document, Deere also explained: "You may convert any group life and/or optional life insurance into an individual policy.  You will receive a notice from the insurance carrier about how to make such a conversion shortly after your Last Day of Active Work. Call Securian Financial at 1-877-494-1034 with any questions."  (*Id.*).

On August 31, 2020, Powell terminated his employment with Deere.  (*Id.*).  Defendants did not send Powell a notice about converting his group life insurance policy to an individual policy, but plaintiff alleges that "upon information and belief," defendants sent such notices to other Deere employees who took early retirement.  (*Id.*, at 3-4).  Powell intended to convert his group life insurance police to an individual policy.  (*Id.*, at 4).

On February 5, 2021, Powell died.  (*Id.*).

On February 24, 2021, defendants sent a letter ("the Letter") to Powell, which stated, in pertinent part:

> Securian Life Insurance has happily protected you and your family as John Deere's life insurance provider.  Due to a recent audit, we discovered you were not provided with your option to keep this coverage when your employment terminated.
> Unfortunately, due to an error, you did not receive communication about your option to continue coverage after terminating.
> If you elect to continue coverage, it will be retroactive to the coverage termination date, and premiums must be paid back to that date.
> \* \* \*

> You have the right to keep some or all of the coverage amount(s) listed above through conversion without answering any questions about your health. If you do not want to keep any coverage, you can let it end on its own.
>
> * * *
>
> You do not need to take action unless you want to keep the coverage amount(s) listed above.
>
> If you want to keep coverage, call 1-866-365-2374. . . . You have until March 27, 2021 to submit your application.

(Doc. 1-3, at 1-2). The Letter was unsigned; rather, it simply ends: "We've appreciated the opportunity to protect you and your family. Securian Financial." (*Id.*, at 2).

On March 16, 2021, plaintiff submitted a claim for benefits. (Doc. 1, at 4).

On March 31, 2021, defendants denied her claim, stating that the Letter was sent in error. (*Id.*).

On June 4, 2021, plaintiff appealed the denial of benefits, which defendants denied. (*Id.*, at 5).

On December 30, 2021, plaintiff filed a complaint in this Court asserting violations of the Employee Retirement Income Security Act ("ERISA"). (Doc. 1). Count 1 alleges a violation of Title 29, United States Code, Section 1132(a)(1)(B), asserting that the Letter effectively extended the 31-day deadline for converting the life insurance policy and that because Powell died during the extended period, he was automatically entitled to benefits. (*Id.*, at 5-6). Count II alleged a "breach of fiduciary duty and equitable relief," under Title 29, United States Code, Section 1132(a)(3), seeking "an order directing Defendants to comply with the terms of the conversion provision under the Plan and its Letter of February 24, 2021, and to pay the life insurance benefits rightly due under the Plan to Plaintiff." (*Id.*, at 6-7).

## II. APPLICABLE STANDARD

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the grounds for the court's jurisdiction . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . and a demand for the relief sought." Rule 12(b)(6) provides that a party may assert the defense of failure to state a claim upon which relief can be granted by motion and that "[a] motion asserting [this] defense[ ] must be made before pleading if a responsive pleading is allowed." "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," but "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Id.*, at 555-56. Indeed, a theory asserted need only be plausible, which requires "enough fact to raise a reasonable expectation that discovery will reveal evidence of [the conduct alleged]." *Id.*

"Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir.2004) (quotations omitted)). Documents necessarily embraced by the pleadings include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Id.* (quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir.2003)).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has *alleged*—but has not *shown*—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added) (citation and internal quotation marks omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. When a pleading contains no more than conclusions, however, those conclusions are not entitled to the assumption of truth. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. "[T]here is no justification for dismissing a complaint for insufficiency of statement, except where it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." *Leimer v. State Mut. Life Assur. Co. of Worcester*, 108 F.2d 302, 306 (8th Cir. 1940).

### III. DISCUSSION

Defendants move to dismiss, arguing that plaintiff's complaint fails to state a claim for relief. (Doc. 4-1, at 1). As to Count I, defendants argue that under the terms of the Plan, Powell failed to timely convert the group policy to an individual policy and the Letter could not extend the 31-day deadline. (*Id.*, at 4-8). Defendants argue that Count II fails to state a claim because it is (1) duplicative of Count I, and (2) fails to allege facts showing defendants breached a fiduciary duty. (*Id.*, at 8-12).

Plaintiff resists defendants' argument as to Count I by arguing that the Letter extended the deadline for converting the life insurance policy and plaintiff's application was therefore timely. (Doc. 7, at 6-9). Plaintiff argues that the Letter reflects defendants' own interpretation of the Plan and allowed for an extension of the deadline, an interpretation plaintiff argues defendants are now stuck with. (*Id.*, at 6-7). Plaintiff also argues that the Plan specifically allows for posthumous conversion. (*Id.*, at 7-8). Last,

5

plaintiff argues that defendants' assertion that the Letter was a mistake is a fact question that should bar dismissing her claim at this stage of the litigation. (*Id.*, at 8-9).

As for Count II, plaintiff argues she stated a claim because it is not duplicative of Count I and states a claim for estoppel. (*Id.*, at 9-11). Specifically, plaintiff alleges the Letter represented an extension of the deadline for conversion and plaintiff relied on that representation in applying for benefits. (*Id.*, at 10-11). In reply, defendants argue that Count II does not allege estoppel or seek equitable relief, nor alleges that defendants made any misrepresentation upon which plaintiff relied to her detriment. (Doc. 9).

The Court will address each count separately.

### A. *Count I*

At oral argument, the parties clarified their positions about Count I. Defendants argued that the terms of the Plan provided Powell only a 31-day window to convert his group coverage to individual coverage, that he missed that deadline, and that he thus has no right to the death benefits. Defendants assert that the Letter was: (1) sent in error, and (2) at most created another 31-day window for conversion which Powell could not accomplish because he had already died by then. Plaintiff argues that the Letter extended the 31-day window for conversion of the policy retroactively from the date Powell terminated his employment to March 27, 2021. Because he died during that period, plaintiff reasons, he was entitled to benefits automatically.

Title 29, United States Code, Section 1132(a)(1)(B), creates a cause of action by a participant or beneficiary of a life insurance policy "to recover benefits due him under the terms of his plan[.]" 29 U.S.C. § 1132(a)(1)(B). The terms of the Plan, then, govern the viability of a claim under Section 1132(a)(1)(B). Thus, to determine the viability of Count I, the Court must focus on the language of the Plan and the Letter.

Under the Terms of the Plan, an employee has 31 days from termination of employment to apply for conversion of the group policy to an individual policy.

6

> **Conversion Right**
> * * *
> **How does an insured convert his or her insurance?**
> An insured converts his or her insurance by applying for an individual policy and paying the first premium within 31 days after the group insurance terminates. No evidence of insurability will be required.

(Doc. 1-2, at 24). There is no dispute that Powell did not apply for conversion within this 31-day window. (Doc. 7, at 3). Thus, the only way in which plaintiff can prevail under Count I is to assert that the Letter altered the terms of the Plan by extending that window.

The Letter cannot serve to extend the conversion window, however, because it is not sufficient to change the provisions of the policy under the Terms of the Plan. First, the Plan states that it constitutes the entire agreement between the parties.

> **General Information**
> **What is the policyholder's agreement with us?**
> This policy and the policyholder's application contain the entire contract between the policyholder and us. Any statements the policyholder makes will, in the absence of fraud, be considered representations and not warranties. Also, any statement that the policyholder makes will not be used to void this policy, nor will it be used in our defense if we refuse to pay a claim, unless the statement is contained in the policyholder's application.
>
> No change or waiver of any provisions of this policy, or any certificate issued under it, will be valid unless made in writing by us and signed by our president, a vice president, our secretary, or an assistant secretary. No agent or other person has the authority to change or waive any provisions of this policy, or of any certificate issued under it.

(Doc. 1-2, at 20).

Second, it provides: "No change or waiver of any provisions of this policy, or any certificate issued under it, will be valid unless made in writing by us and signed by our president, a vice president, our secretary, or an assistant secretary." (*Id.*). The Letter

7

was not signed by the president, a vice president, secretary or assistant secretary. This precludes the Letter from altering the terms of the Plan.[2]

Even were the Court to ignore the plain language of the Plan and consider the Letter as altering the terms of the Plan, the Court would find that plaintiff still has not stated a claim under Count I. At most, the Letter created a new window during which Powell could apply for conversion. The Letter was dated February 24, 2021, and gave Powell until March 27, 2021, to apply for conversion, a 31-day window. Because he had already died, he could not and did not do so.

Plaintiff argues that Powell did not need to apply for conversion during that window because the Plan provided that if an insured dies during the conversion window period, the insured is automatically covered. (Doc. 7, at 8). Plaintiff further argues that the Letter extended the window retroactively back to the date of his employment termination and prospectively to March 27, 2021. (*Id.*). The plaintiff reasons that, since Powell died during that period, he is automatically entitled to benefits. (*Id.*).

It is true that the Plan provides for automatic benefits if an insured dies during the 31-day window.

> **What happens if the insured dies during the 31-day period allowed for conversion?**
> If the insured dies during the 31-day period allowed for conversion, we will pay a death benefit regardless of whether or not an application for coverage under an individual policy has been submitted. The death benefit will be the amount of insurance the insured would have been eligible to convert under the terms of the conversion right section.

---

[2] The Court need not reach the question of whether the Letter was sent by mistake or whether that is a fact question that precludes dismissal at this stage of litigation. The Court's ruling does not turn on whether the Letter was sent by mistake, and indeed finds that question irrelevant. Even if the Letter was sent intentionally, because it was not signed in a manner required by the terms of the Plan, it cannot change the terms of the Plan.

> We will return any premium the insured paid for an individual policy to the insured's beneficiary named under this group policy. In no event will we be liable under both this group policy and the individual policy.

(Doc. 1-2, at 24). The Letter, however, did not extend the 31-day window retroactively back to the termination of Powell's employment. Instead, the Letter states: "If you elect to continue coverage, *it* will be retroactive to the coverage termination date, and premiums must be paid back to that date." (Doc. 1-3, at 1 (emphasis added)). The "it" in this sentence refers to coverage, not the window for applying for conversion. Therefore, it is clear from the Letter that it offered a new period of conversion of 31 days. It is not happenstance that the date of the Letter is February 24, 2021, and the Letter gave Powell until March 27, 2021, to convert, a period of 31 days. (Doc. 1-3, at 1-2).

At oral argument, plaintiff pointed to language in the Letter stating: "If you do not want to keep any coverage, you can let it end on its own." (Doc. 1-3, at 2). Plaintiff argued that this language implies that the coverage was still in effect at the time of the Letter. Although one could read the sentence as implying that Powell was still covered under the policy, the sentence does not explicitly say so, nor does it address the question of whether the period for converting the policy extended retroactively. In short, this language is simply too vague and imprecise upon which to rest a claim for benefits when explicit and unambiguous language in the Plan establishes that Powell unfortunately missed his window to convert his group policy to an individual policy.

For these reasons, the Court finds that plaintiff's claim asserting a violation of Title 29, United States Code, Section 1132(a)(1)(B) fails to allege sufficient facts to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. Defendants' motion to dismiss Count I is **granted**.

9

### B. *Count II*

In Count II, plaintiff asserts a claim of "breach of fiduciary duty and equitable relief" under Title 29, United States Code, Section 1132(a)(3). (Doc. 1, at 6-7). Defendants first assert plaintiff's Count II fiduciary breach claim must be dismissed, as it consists of nothing more than a repackaged claim for benefits under Section 1132(a)(1)(B). (Doc. 4-1, at 9-10). Defendants also argue that the complaint fails to allege facts showing a breach of fiduciary duties. (*Id.*, at 10-11). In her resistance, plaintiff characterizes her claim in Count II as one alleging equitable estoppel. (Doc. 7, at 10-11). In their reply, defendants argue that the complaint fails to allege equitable estoppel. (Doc. 9).

Title 29, United States Code, Section 1132(a)(3) "allows 'a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain *other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan [.]'" *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 717 (8th Cir. 2014) (quoting 29 U.S.C. § 1132(a)(3) (emphasis added)). "[O]ther appropriate equitable relief" under Section 1132(a)(3)(B) "refer[s] to 'those categories of relief that were typically available in equity.'" *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)).

Here, plaintiff seeks the same relief in both her Section 1132(a)(1)(B) claim and her Section 1132(a)(3) claim, i.e., the benefits she allegedly was entitled to under the life insurance policy. Plaintiff's ability to seek this relief in her Section 1132(a)(1)(B) claim forecloses her from also pursuing it in this Section 1132(a)(3)(B) claim. "[W]here a plaintiff is 'provided adequate relief by the right to bring a claim for benefits under . . . § 1132(a)(1)(B),' the plaintiff does not have a cause of action to seek the same remedy under § 1132(a)(3)(B)." *Geissal v. Moore Medical Corp.*, 338 F.3d 926, 933 (8th Cir.

2003) (quoting *Conley v. Pitney Bowes*, 176 F.3d 1044, 1047 (8th Cir. 1999)); *see also Pilger v. Sweeny*, 725 F.3d 922, 927 (8th Cir. 2013) (holding that a plaintiff may only bring a claim under this section if she is not "provided adequate relief by the right to bring a claim for benefits under § 1132(a)(1)(B).") (internal quotation marks omitted). The Supreme Court has explained that when "Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).

Plaintiff's complaint also fails to state a claim to the extent that plaintiff is claiming that she relied to her detriment on the representations that defendants would provide Powell notice of how to convert to individual coverage. First, Deere made those representations, not defendants. (Doc. 1, at 3). Second, defendants had no legal duty to provide such notice in this case. In 1986, Congress amended ERISA to require the plan sponsor of a "group health plan" to allow each qualified beneficiary who stands to lose coverage due to a "qualifying event" to elect continued coverage, and further requires that beneficiaries receive notice of such rights. 29 U.S.C. §§ 1161(a), 1166. Termination of employment is a "qualifying event." 29 U.S.C. § 1163(2). From the plain language of the statute, it is clear that the post-termination notice requirements apply to a "group health plan," the definition of which does not encompass a life insurance plan. 29 U.S.C. § 1167(1); 26 U.S.C. § 213(d). *See Noel v. Laclede Gas Co.*, 612 F. Supp.2d 1061, 1064 (E.D. Mo. 2009) (holding that the notice requirement provisions do not extend to life insurance); *see also Erlitz v. Cracker Barrel Old Country Store, Inc.*, 416 F. Supp.2d 711, 722-23 (E.D. Mo. 2006) ("An ERISA fiduciary is not obligated to individually notify plan participants or beneficiaries of the specific impact of a plan's terms on them based on their personal circumstances."). Further, the group life insurance policy here did not promise to provide such notice to employees. *Cf. Hauth v. Prudential*

*Ins. Co. of America*, No. C08–3025–MWB, 2010 WL 3168279, at *5-8 (N.D. Iowa Aug. 10, 2010) (addressing whether a complaint stated a claim when the insurance policy promised to provide such notice).

Plaintiff's attempt to recast her claim in Count II as one for equitable estoppel is unavailing. First, plaintiff does not mention the word estoppel anywhere in her complaint, and does not claim that she relied to her detriment on any representation made by defendants. Second, the facts she alleges do not make out a claim for equitable estoppel. The Eighth Circuit has explicitly stated that "[c]ourts may apply the doctrine of estoppel in ERISA cases only to interpret ambiguous plan terms" and that "common-law estoppel principles cannot be used to obtain ERISA benefits that are not payable under the terms of the ERISA plan." *Fink v. Union Cent. Life Ins. Co.*, 94 F.3d 489, 492 (8th Cir. 1996); *see also Neumann v. AT & T Commc'ns*, 376 F.3d 773, 784 (8th Cir. 2004) (stating that a plaintiff "may not use an estoppel theory to modify the unambiguous terms of an ERISA plan"). Here, plaintiff does not identify anything about the Plan or the Letter that is ambiguous. *Mellott v. IBP, Inc.*, No. 96–2092, 1997 WL 33558604, at *3 (N.D. Iowa 1997) (dismissing equitable estoppel claim where plaintiff failed to allege ambiguous plan terms).

Further, plaintiff's identification of the Letter as the basis for her claim in Count II fails to state a claim whether it is cast as a breach of fiduciary duty or as a claim for equitable estoppel. Plaintiff has not alleged facts showing she relied to her detriment on the Letter. *See Maxa v. John Alden Life Ins. Co.*, 972 F.2d 980 (8th Cir. 1993) ("Evidence of detrimental reliance must show that the plaintiff took action, resulting in some detriment, that he would not have taken . . . or that he failed, to his detriment, to take action that he would have taken[.]"). Plaintiff applied for benefits after she received the Letter relying on her belief that it extended the time for conversion, but defendants did not deny benefits because of her action. Defendants denied benefits because it

asserted Powell did not timely apply for an individual policy upon leaving employment with Deere. In other words, this case may be different if defendants had sent Powell a letter before expiration of the 31-day deadline telling him he had until March 2021 to apply for conversion and, relying on that assertion, he did not apply for conversion in a timely manner resulting in the denial of benefits. That is not what happened here, based on the facts alleged in the complaint. Thus, plaintiff has failed to state a claim upon which relief may be granted in Count II. *See Porter v. Sun Life & Health Ins. Co.*, 808 F. Supp.2d 1156, 1173–74 (W.D. Mo. 2011) (finding that an insurer's error regarding whether coverage existed was not an interpretation of an ambiguous plan provision as would be required for an equitable estoppel claim).

Thus, defendants' motion to dismiss Count II is **granted.**

## IV. CONCLUSION

For the reasons stated, the Court **grants** defendants' motion to dismiss. (Doc. 4).

**IT IS SO ORDERED** this 29th day of April, 2022.

_____
C.J. Williams
United States District Judge
Northern District of Iowa